UNILOY MILACRON USA INC v DEPARTMENT OF TREASURY

Docket No. 300749. Submitted January 12, 2012, at Lansing. Decided
    January 26, 2012. Approved for publication March 29, 2012, at
    9:00 a.m.

    Uniloy Milacron USA Inc. brought an action in the Court of Claims
        against the Department of Treasury, seeking a refund of single
        business tax paid under protest for tax years 2003, 2004, and 2005.
        Uniloy manufactures molds at its manufacturing plant in MI.
        Uniloy Milacron, Inc. (UMI), an affiliate corporation, had a dis-
        tributor agreement with Uniloy under which UMI would market
        Uniloy's products as well as purchase the products for resale. UMI
        solicited orders from customers for Uniloy's products and sent the
        orders to Uniloy for approval. Upon approval, Uniloy would
        package, load, and ship the products directly to customers, the
        majority of which were outside Michigan. UMI never obtained
        possession of the products, but title in the products did transfer
        from Uniloy to UMI at some point. When Uniloy prepared its
        Michigan single business tax returns for the specified years it
        sourced its sales for purposes of computing its sales-
        apportionment factor based on the destination to which its prod-
        ucts were shipped or delivered to a customer. The department
        conducted an audit and allocated all of Uniloy's sales to Michigan
        for purposes of the sales-apportionment factor. The court, Paula J.
        Manderfield, J., concluded that all Uniloy's sales could not be
        apportioned to Michigan and granted summary disposition in
        favor of Uniloy. The department appealed.

        The Court of Appeals *held*:

        The former Single Business Tax Act (SBTA), MCL 208.1 *et seq.*,
    was a value-added tax that measured the increase in value of goods
    and services brought about by whatever a business had done to
    them between the time of purchase and time of sale. Under former
    MCL 208.45 a formula involving three ratios—the property factor,
    the payroll factor, and the sales factor—was used to apportion
    taxing authority for goods and services between two taxing states
    and calculate the adjusted tax base, which was then used to
    calculate the single business tax liability. The Court of Claims
    properly determined that all of Uniloy's sales could not be appor-

tioned to Michigan for calculation of tax liability under the SBTA. Under former MCL 208.52(b), Uniloy's sales could be sourced to Michigan for purposes of the sales factor calculation only if the product was delivered or shipped to a customer in Michigan. Uniloy's employees never took possession of the products and were never involved in the packaging, loading, and shipping of the products. The sale of products to UMI for resale, without evidence of shipment and delivery to UMI, was not sufficient to apportion that sale to Michigan for purposes of single business tax liability. If the Legislature had intended that a sale of tangible personal property be sourced on the basis of where the sale occurred, it would have included language in the SBTA to that effect.

Affirmed.

TAXATION — SINGLE BUSINESS TAX — APPORTIONMENT FACTOR — SALES FACTOR.

Under MCL 208.45 of the former Single Business Tax, a formula involving three ratios—the property factor, the payroll factor, and the sales factor—was used to apportion taxing authority for goods and services between two taxing states and calculate the adjusted tax base, which was then used to calculate the single business tax liability; under former MCL 208.52(b) sales of tangible personal property could be sourced to Michigan for purposes of calculating the sales factor only if the product had been shipped or delivered to a customer within Michigan; the sale of property would not be sourced on the basis of where the sale occurred.

*Honigman Miller Schwartz & Cohn LLP* (by *Patrick R. Van Tiflin* and *Daniel L. Stanley*) for Uniloy Milacron USA, Inc.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, and *Bruce C. Johnson*, Assistant Attorney General, for the Department of Treasury.

Before: BECKERING, P.J., and OWENS and SHAPIRO, JJ.

PER CURIAM. In this case involving the Single Business Tax Act[1] (SBTA), former MCL 208.1 *et seq.*, defendant, the Department of Treasury, appeals the Court of

---

[1] The SBTA has been repealed. *Tyson Foods, Inc v Dep't of Treasury*, 276 Mich App 678, 679 n 1; 741 NW2d 579 (2007); see 2006 PA 325. To

Claims's order granting summary disposition under MCR 2.116(C)(10) in favor of plaintiff, Uniloy Milacron USA, Inc. We affirm.

I

Plaintiff manufactures molds used in blow molding machines. Its manufacturing plant is in Tecumseh, Michigan. Plaintiff entered into a distributor agreement with an affiliate corporation: Uniloy Milacron, Inc. (UMI). Under the distributor agreement, plaintiff and UMI agreed that UMI would market plaintiff's products as well as purchase plaintiff's products for resale. UMI solicited orders from customers for plaintiff's products and sent the orders to plaintiff for approval. Upon approval, plaintiff's personnel would package, load, and ship the products directly to the customers. The "vast majority" of the products were shipped to customers outside Michigan. UMI never obtained possession of the products. Although both plaintiff and defendant agree that title in the products transferred from plaintiff to UMI at some point before the customers acquired the products, the distributor agreement was silent with respect to the transfer of title.

When it prepared its Michigan single business tax (SBT) returns for the 2003, 2004, and 2005 tax years, plaintiff sourced its sales for purposes of computing its sales factor "based on the destination to which its products were shipped or delivered to a customer." When defendant audited plaintiff for these tax years, defendant determined that all of plaintiff's sales were Michigan sales for purposes of the sales factor used in calculating the taxes and, thus, assessed plaintiff an

make the text of the opinion easier to read, references to SBTA provisions are to the version in effect at the time the tax was imposed

additional $28,558.67 in single business taxes and interest. Plaintiff paid the assessment under protest.

Plaintiff sued defendant in the Court of Claims to obtain a refund. Plaintiff moved for partial summary disposition under MCR 2.116(C)(10) (no genuine issue of a material fact), and defendant responded, requesting that the court grant summary disposition in defendant's favor under MCR 2.116(I)(2) (nonmoving party entitled to judgment). After a hearing, the court granted plaintiff's motion for summary disposition, denied defendant's motion, and entered judgment for plaintiff in the amount of $28,558.67, plus statutory interest.

II

The sole issue before this Court is whether the Court of Claims erred when it determined that all of plaintiff's sales could not be apportioned to Michigan as a matter of law and, thus, granted summary disposition in favor of plaintiff. We conclude that it did not.

We review de novo a trial court's determination of a motion for summary disposition under MCR 2.116(C)(10). *Ormsby v Capital Welding, Inc*, 471 Mich 45, 52; 684 NW2d 320 (2004). When reviewing a motion brought under MCR 2.116(C)(10), "we consider the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in the light most favorable" to the nonmoving party. *Rose v Nat'l Auction Group*, 466 Mich 453, 461; 646 NW2d 455 (2002). Summary disposition is appropriate "if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id.*

Resolution of this appeal also involves the interpretation of statutory language, which we review de novo. *Ford Motor Co v Dep't of Treasury*, 288 Mich App 491, 494; 794

NW2d 357 (2010). "The primary goal of judicial interpretation of statutes is to ascertain and give effect to the Legislature's intent." *Guardian Photo, Inc v Dep't of Treasury*, 243 Mich App 270, 276; 621 NW2d 233 (2000). The specific language of the statute must be examined to determine the Legislature's intent because the Legislature is presumed to have intended the meaning it plainly expressed. *Id.* at 276-277. "Where the language poses no ambiguity, this Court need not look outside the statute, nor construe the statute, but need only enforce the statute as written." *Ammex, Inc v Dep't of Treasury*, 273 Mich App 623, 648; 732 NW2d 116 (2007). "A provision is ambiguous if it is susceptible to more than a single meaning or if it irreconcilably conflicts with another provision." *TMW Enterprises, Inc v Dep't of Treasury*, 285 Mich App 167, 172; 775 NW2d 342 (2009).

III

Michigan's repealed SBT was a value-added tax that "measure[d] the increase in value of goods and services brought about by whatever a business does to them between the time of purchase and time of sale." *Guardian Photo*, 243 Mich App at 277. Any person engaged in business activity in Michigan was subject to the SBT because the SBT was a tax on economic activity, not an income tax. *TMW*, 285 Mich App at 173. The SBTA provided a formula for the apportionment between two taxing states through a calculation involving three ratios: the property factor, the payroll factor, and the sales factor. *Fluor Enterprises, Inc v Dep't of Treasury*, 265 Mich App 711, 717; 697 NW2d 539 (2005), rev'd in part on other grounds 477 Mich 170 (2007); see also MCL 208.45. The formula was used in a calculation to determine the adjusted tax base, which was then used to calculate the SBT liability. *Fluor*, 265 Mich App at 717. The dispute in this

case involves how plaintiff's sales factor was calculated using the amount of sales sourced to Michigan.

The sales factor was a fraction with the numerator being the "the total sales of the taxpayer in this state during the tax year" and the denominator being "the total sales of the taxpayer everywhere during the tax year." MCL 208.51. MCL 208.52 addressed when a sale of tangible personal property was sourced to Michigan and stated in pertinent part:

> Sales of tangible personal property are in this state in any of the following circumstances:
>
>         *   *   *
>
> (b) For tax years beginning on and after January 1, 1998, the property is shipped or delivered to any purchaser within this state regardless of the free on board point or other conditions of the sales.

We conclude that MCL 208.52(b) was not ambiguous; therefore, we must enforce it as written. See *Ammex*, 273 Mich App at 648. The SBTA did not define "shipped" or "delivered." MCL 208.2 provided that "terms not defined within the SBTA are to be accorded 'the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes.' " *Consumers Power Co v Dep't of Treasury*, 235 Mich App 380, 385; 597 NW2d 274 (1999). However, the Internal Revenue Code lacks standard definitions for "shipped" and "delivered"; thus, for further guidance this Court may consult a dictionary for their definitions. See *id.*; see also *TMW*, 285 Mich App at 172 (explaining that if a statute does not define a term, this Court may consult a dictionary to afford a statutory term its plain and ordinary meaning). *Random House Webster's College Dictionary* (2001) defines "deliver" as "to carry and turn over . . . to the intended

recipient or recipients," "to give into another's possession or keeping," to "hand over," and to "surrender." The dictionary defines "ship" as "to send or transport by ship, rail, truck, plane, etc." or "to send away." *Id.*

Accordingly, under MCL 208.52(b), a sale by plaintiff would have been sourced to Michigan for purposes of the sales factor only if plaintiff's product was "carried and turned over," "handed over," "surrendered," "sent away," or "transported" to a customer within Michigan. In this case, there is no documentary evidence to support defendant's assertion that the products were shipped or delivered by plaintiff to UMI. Neither UMI nor its employees took possession of the products, and they were not involved in the packaging, loading, and shipping of the products. Rather, the undisputed evidence demonstrates that plaintiff's employees loaded the product onto common carriers for delivery to UMI's customers.

Defendant insists that the products were necessarily delivered to UMI, arguing that the products "were made in Michigan and were shipped from Michigan, and were never anywhere else before they were shipped to UMI's customers, [so] logically, [plaintiff] must have delivered the [products] to UMI in Michigan, however that delivery took place." We reject this argument. Just because plaintiff sold the products to UMI does not necessarily mean that plaintiff shipped or delivered the products to UMI, and defendant has not provided this Court with any legal authority to support such a conclusion. Plaintiff's sales were not sourced to Michigan merely because plaintiff sold its products to UMI in Michigan for resale. See MCL 208.52(b). Had the Legislature intended a sale of tangible personal property to be sourced on the basis of where the sale occurred, it would have included language in the SBTA to that

effect; we will not read words into the plain language of an unambiguous statute. *PIC Maintenance, Inc v Dep't of Treasury*, 293 Mich App 403, 410-411; 809 NW2d 669 (2011); see also *Kurz v Mich Wheel Corp*, 236 Mich App 508, 512-513; 601 NW2d 130 (1999).

Defendant also argues that the Court of Claims improperly relied on a draft revenue administrative bulletin (RAB) issued by defendant that interpreted the current Michigan Business Tax Act, MCL 208.1101 *et seq*. We disagree. An RAB is "issued under MCL 205.3(f), which allows defendant to issue bulletins that index and explain current department interpretations of current state tax laws." *JW Hobbs Corp v Dep't of Treasury*, 268 Mich App 38, 46; 706 NW2d 460 (2005) (quotation marks and citation omitted). In this case, the Court of Claims did discuss RAB 2010-XX—and authority from other jurisdictions regarding similar statutory schemes—and reasoned that the RAB contradicted defendant's position in the instant case. While we acknowledge that an RAB is only an interpretation of a statute and does not have the force of law, *Catalina Mktg Sales Corp v Dep't of Treasury*, 470 Mich 13, 21; 678 NW2d 619 (2004), we note that the Court of Claims did as well, opining that the RAB was merely "persuasive." Moreover, even assuming that the Court of Claims afforded the RAB undue weight, we do not reverse because the court's conclusion in this case was consistent with the plain language of MCL 208.52(b). See *Taylor v Laban*, 241 Mich App 449, 458; 616 NW2d 229 (2000) ("[W]e will not reverse the court's order when the right result was reached for the wrong reason.").

Affirmed.

BECKERING, P.J., and OWENS and SHAPIRO, JJ., concurred.